**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ANDREW P. MOORE, II

        Plaintiff,

vs.                                    Case No. 3:04-cv-1057-J-32HTS

JOHN E. POTTER, POSTMASTER
GENERAL & SUCCESSORS of the
U.S. POSTAL SERVICE, in his official capacity

        Defendant.

_____

**<u>ORDER</u>**[1]

    This case is before the Court on Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 44), Plaintiff's Motion for Summary Judgment (Doc. 49), Plaintiff's Motion for Sanctions for Fraud upon the Court and Other Misconduct (Doc. 55), Plaintiff's Motion for Sanctions Under 28 U.S.C. § 1927 (Doc. 57), Plaintiff's Motion for Sanctions (Doc. 61) and Plaintiff's Motion to Take Judicial Notice (Doc. 65).   Plaintiff responded to defendant's motion to dismiss. (Docs. 46).  Defendant responded to four of plaintiff's motions.  (Docs. 53, 59, 60 & 64).  Defendant did not file a response to plaintiff's motion to take judicial notice.

_____

    [1]   Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

## I.    BACKGROUND AND SUMMARY OF CLAIMS

On June 30, 2005, *pro se* plaintiff Andrew P. Moore, II ("plaintiff"), a fifty-three year old African-American male who began employment with the United States Postal Service ("USPS") in 1988, filed the Second Amended Complaint alleging the following seven causes of action against defendant, John E. Potter, the Postmaster General, in his official capacity ("defendant"): 1) Count I - Disparate Treatment Race Discrimination; 2) Count II - Retaliation for EEO Participation and Opposition to Discrimination and Disability Retaliation and Discrimination; 3) Count III - Retaliation for EEO Participation, Opposition to Discrimination, and Disability Retaliation; 4) Count IV - Discriminatory & Retaliatory Hostile Work Environment; 5) Count V - Constructive Discharge in Violation of Title VII; 6) Count VI - Violation of the Privacy Act of 1974; and 7)  Count VII - Claim for Declaratory, Injunctive and Miscellaneous Relief.  (Doc. 37).  Plaintiff's second amended complaint spans forty-three pages, contains over one-hundred and fifty paragraphs and has multiple exhibits.  It is the consummate shotgun pleading and violates the pleading standards set forth in the Federal Rules of Civil Procedure.  However, the Court was able to glean sufficient information from the voluminous pleadings to render substantive rulings on the parties' motions.

This is not the first time plaintiff has filed a lawsuit arising out of his employment with the USPS.  In fact, plaintiff has filed approximately seven prior suits, two of which were decided in this district within the last four years.  The first of those was <u>Moore</u>

v. Brumagin, Case No. 3:02-cv-266-J-25HTS ("Brumagin").  In that case, plaintiff sued

multiple individual employees of the USPS alleging claims for purported violations of

his First and Fourteenth Amendment Rights (Counts I - III), RICO, 18 U.S.C. § 1961,

*et seq.*, (Counts IV - VIII), and conspiracy to interfere with plaintiff's rights and to

obstruct justice pursuant to 42 U.S.C. § 1985 (Count IX).   Plaintiff also sued

Postmaster John E. Potter in his official capacity alleging claims pursuant to 42 U.S.C.

§§ 1983 & 1985 (Counts X & XI).  Significant portions of the allegations in that suit

centered around an incident that occurred at work on February 19, 2002, when an

individual named Byron Redmond allegedly threw a sack of mail at plaintiff, which

struck him on the right arm.   Plaintiff further alleged that Redmond repeatedly

screamed profanities at him and that plaintiff's supervisor, co-defendant Randy Guy,

failed to take appropriate action against Redmond. (Doc. 44, Ex. "K," Brumagin,

Complaint, ¶ 49(h)-(p)).    Plaintiff also asserted a litany of other allegations

surrounding his employment with the USPS and the actions of his co-workers and

supervisors.  In an Order dated March 10, 2003, United States District Judge Henry

Lee Adams dismissed plaintiff's claims with prejudice.  (Id. at Ex. "L").

Then, on April 7, 2003, plaintiff filed another lawsuit against Postmaster John

Potter, multiple USPS employees, Genex Services, Inc. and Bruce A. Hartwig, P.A.

(Id. at Ex. "M," Moore v. Potter, et al., Case No. 3:03-cv-286-J-21HTS).  Ultimately,

on November 3, 2003, plaintiff filed a Second Amended Complaint in that case, which

was the viable complaint when Potter moved to dismiss ("Potter I").  (Id. at Ex. "M").

In that case, plaintiff alleged, *inter alia*, that: (1) employees of defendant (Byron Redmond) assaulted him on February 19, 2002 at work, and defendant's supervisors failed to take any corrective action; (2) even though the Brumagin case containing the February 19, 2002 allegations was dismissed with prejudice, the "intimidation and retaliation against [plaintiff] ... continues on an ongoing basis"; (3) defendants conspired against him "for his participation in federal proceedings related to Case 3:02-cv-266-J-25[HTS] and have conspired to use intimidation, retaliation and threats to prevent Moore from freely, fully, and truthfully testifying as to matters raised in that case as well as any other cases in federal court, past or future,"; and (4) he was entitled to certain workers' compensation benefits due to a back injury he sustained at work on March 30, 2002.   (Id. at Ex. "M," ¶ 24-33).   Plaintiff asserted these and other allegations in Potter I attempting to support claims brought under RICO (18 U.S.C. § 1961, *et seq.*), False Light Invasion of Privacy, violations of the First, Fifth and Ninth Amendments, Conspiracy to Obstruct Justice pursuant to 42 U.S.C. § 1985(2), violations of 42 U.S.C. § 1986, and aiding and abetting and vicarious liability. (See generally Doc. 44, Ex. "M").  In an Order dated August 2, 2004, the district court dismissed plaintiff's claims as frivolous.  (Id. at Ex. "P").  In a July 8, 2005 unpublished opinion, the Eleventh Circuit affirmed the district court's dismissal.  (Id. at Ex. "A," Moore v. Potter, Case No. 04-15079).

Brumagin and Potter I are not plaintiff's only appearances in this district court or the Eleventh Circuit Court of Appeals.  On December 29, 2004, the Eleventh Circuit

issued an opinion affirming a district court's dismissal of yet another one of plaintiff's lawsuits. (Id. at Ex. "B," Moore v. Martin, et al., Case No. 04-11382).  At the outset of that opinion, the Eleventh Circuit noted that from 1997 to 1998, plaintiff filed four other cases alleging various discrimination and retaliation claims, as well as claims based on purported constitutional violations. (Id.).  The Eleventh Circuit further noted that those cases were consolidated and summary judgment was granted to defendants; plaintiff did not appeal that decision. (Id.).  After the conclusion of that case, plaintiff filed the Moore v. Martin, et al., case against the USPS, multiple USPS employees, the union to which plaintiff was a member, an Assistant United States Attorney who represented the government in one of plaintiff's prior cases and a private attorney.[2]  (Id.).  The Eleventh Circuit ultimately affirmed the district court's decision to dismiss the case, and did so on res judicata grounds, *inter alia*.  (Id.).

Now, plaintiff is back.  In the instant second amended complaint, he alleges in prolix and conclusory fashion the claims previously set forth.  While the Court could dismiss the case because of plaintiff's wholesale failure to plead in accordance with the applicable Federal Rules of Civil Procedure (even construing the rules broadly because plaintiff is *pro se*), the Court has painstakingly parsed the allegations in the

_____

[2]   During Martin, plaintiff filed another lawsuit against the USPS, the same Assistant United States Attorney and private attorney and the judges of the Middle District of Florida, including the undersigned.  That suit was dismissed and the Eleventh Circuit affirmed.  In the present case, the undersigned denied plaintiff's motion to disqualify the undersigned from hearing this case (Doc. 22).

second amended complaint to glean the substance of plaintiff's claims.[3]   The gravamen of these claims is strikingly similar to many of those raised in <u>Brumagin</u> and <u>Potter I</u>.

Count I (Disparate Treatment Race Discrimination) avers (1) the February 19, 2002 incident where USPS employee Byron Redmond allegedly threw a mail bag at plaintiff, shouted profanities at him and made threatening remarks, and (2) that plaintiff's supervisors discriminated against him because they failed to take any corrective action and treated a similarly situated employee (Eric Geidel), who suffered harassment, differently than plaintiff.  (Doc. 37, ¶¶ 30-45).  Plaintiff incorporates these allegations into all successive counts (Counts II through VII).

Count II (Retaliation for EEO Participation and Opposition to Discrimination and Disability Retaliation & Discrimination) is primarily a recapitulation of the allegations of Count I, but appears to allege that the February 19, 2002 incident was in retaliation for his filing prior lawsuits and charges of discrimination with the USPS and Equal Employment Opportunity Commission (EEOC) since 1997 until his resignation in April 2004.  (<u>Id.</u> at ¶¶ 46-81).

Count III (Retaliation for EEO Participation Opposition to Discrimination and Disability Retaliation) is ostensibly another retaliation claim based on the USPS's

_____

[3]   In <u>Haines v. Kerner</u>, 92 S.Ct. 594 (1972), the Supreme Court held that allegations in a *pro se* complaint are to be read in a liberal fashion.  This court has done everything possible to read plaintiff's complaint consistent with the directive in <u>Haines</u>.

conduct toward plaintiff after his April 2004 resignation.  It specifically alleges, *inter alia*, that after plaintiff resigned from the USPS in April 2004, defendant "retaliated against [plaintiff] where it repeatedly delayed, intercepted, and/or tampered with [plaintiff's] incoming [and] outgoing mail to punish [plaintiff] for his EEO participation and opposition to discrimination," "[d]efendant, thru its employees and/or agents, retaliated against [plaintiff] where it repeatedly forwarded harassing and intimidating mail to [plaintiff's] residence with the intent to undermine and abrogate [plaintiff's] rights under Title VII and the Rehabilitation Act," and "[d]efendant ... retaliated against [plaintiff] where it caused him to incur wrongful debt and caused harassing [and] intimidating telephone calls to [plaintiff's] residence." (Id. at ¶¶ 101, 102 & 105).

Count IV (Discriminatory and Retaliatory Hostile Work Environment) incorporates the allegations of all prior counts and essentially recasts those allegations as creating a hostile work environment.  Count V (Constructive Discharge in Violation of Title VII) incorporates the prior one-hundred thirteen paragraphs in the second amended complaint and avers that based on all of the conduct delineated therein, plaintiff was constructively discharged in April 2004.  (Id. at ¶¶ 115, 118).

Count VI (Violation of the Privacy Act of 1974 - 5 U.S.C. § 552a, *et seq.*) alleges that defendant maintained "false" and "misleading" employment records and falsified or forged other records relating to his medical condition and employment status, which caused a panoply of "adverse determinations" against him.  (Id. at ¶¶ 133 & 136).  Finally, Count VII (Claim for Declaratory, Injunctive and Miscellaneous

Relief) asserts, in part, that the Merit Systems Protection Board (MSPB) improperly denied plaintiff relief on his constructive discharge claim presented to it, and petitions this Court for relief based on that claim.

Defendant seeks dispositive relief on multiple grounds in its Motion to Dismiss, or in the alternative, for Summary Judgment. With that motion, defendant submits multiple exhibits and seeks to have the Court consider the exhibits in ruling on the motion.

## II.   APPLICABLE STANDARDS

When considering a motion to dismiss under Rule 12(b)(6), a court must accept the allegations of the plaintiff's complaint as true and construe the allegations in the light most favorable to the plaintiff. M.T.V. v. DeKalb County Sch. Dist., 446 F.3d 1153, 1156 (11th Cir. Apr. 18, 2006) (citation omitted). A complaint may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Lopez v. First Union Nat'l Bank, 129 F.3d 1186, 1189 (11th Cir. 1997) (quoting Conley v. Gibson, 78 S.Ct. 99, 102 (1957)). Rule 12(b)(6) authorizes a court to dismiss a complaint on a dispositive issue of law. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

If a party moves to dismiss pursuant to Rule 12(b)(6) and presents matters outside the pleadings, the court has discretion whether or not to consider documents attached to the motion to dismiss. Once the court determines to consider matters

extraneous to the pleadings, Rule 12(b) mandates that the motion is converted from a motion to dismiss to a motion for summary judgment, and the court must provide the nonmoving party ten days "to supplement the record" prior to issuing a ruling. Fed.R.Civ.P. 12(b); Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1267 (11th Cir. 2002). There are, however, three exceptions to the conversion and notice rules.  First, facts that are properly judicially noticed do not give rise to a conversion.  Brown v. Brock, 169 Fed. Appx. 579, 582 (11th Cir. March 3, 2006) (unpublished opinion) (citing Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1295 (11th Cir. 1998)).  Second, "a document outside the pleadings may be considered if it is essential to the plaintiff's claim and not in dispute."  Id. (citing Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002)).  Third, conversion, even without notice, is harmless if the record indicates the parties understood conversion would take place and submitted all of the documents they would have submitted even with proper notice.  Id. (citation omitted).

A court may take judicial notice of the public record, without converting the motion to dismiss to a motion for summary judgment, because such documents are capable of accurate and ready determination.  Makro Capital of America, Inc. v. UBS AG, 372 F.Supp.2d 623, 627 (S.D. Fla. 2005)(citing Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1279-80 (11th Cir. 1999)); see also Universal Express, Inc. v. SEC, 2006 WL 1004381, at * 1-2 (11th Cir. April 18, 2006) (unpublished opinion).  Here, the Court may take judicial notice of documents filed in other judicial proceedings, without

converting the motion to dismiss filed herein to a motion for summary judgment, because they are public documents, see Universal Express, 2006 WL 1004381, at * 2, for the limited purpose of recognizing the "judicial act" taken, or the subject matter of the litigation and issues decided (as opposed to adopting the findings of fact made therein).  Young v. City of Augusta, Ga.,  59 F.3d 1160, 1166 n.11 (11th Cir. 1995); In re Delta Resources, Inc., 54 F.3d 722, 725 (11th Cir. 1995).  Furthermore, the Court may consider the record in previous cases to clarify the meaning of the court orders.  Wagner v. Daewoo Heavy Industries America Corp., 289 F.3d 1268, 1274 n.7 (11th Cir.), vacated on different grounds, 298 F.3d 1228, 314 F.3d 541 (11th Cir. 2002); see generally Schafler v. Indian Spring Maintenance Ass'n., 139 Fed. Appx. 147, 149 (11th Cir. 2005)(court took judicial notice of orders issued in previous lawsuits finding requirements of *res judicata* met and dismissing complaint).

Here, the court exercises its discretion to consider only those documents that are properly judicially noticed.  Those documents consist of pleadings filed in prior cases in which plaintiff was a litigant, various decisions of the United States District Court for the Middle District of Florida and Eleventh Circuit Court of Appeals in plaintiff's prior cases and various filings and decisions of administrative agencies, including the USPS, Equal Employment Opportunity Commission ("EEOC") and Merit Systems Protection Board ("MSPB").  The court will construe defendant's motion as a motion to dismiss under Rule 12, and not a motion for summary judgment under Rule 56.

III.     **DISCUSSION**

     **A.     Defendant's Motion to Dismiss**

          **1.     Res Judicata**

Defendant asserts in the motion to dismiss that all of plaintiff's claims, except for the constructive discharge claim (Count V), are barred by the doctrines of res judicata (claim preclusion) or collateral estoppel (issue preclusion).  While plaintiff's arguments set forth in the memorandum opposing the motion to dismiss (Doc. 46) are difficult to parse, it appears that plaintiff contends that he did not allege certain allegations in his prior lawsuits because he was attempting to fulfill the required conditions precedent under Title VII before asserting his employment related claims.

"The doctrine of *res judicata*, or claim preclusion, will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits [or were in privity with those parties]; and (4) the prior and present causes of action are the same." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003); see also In re Piper Aircraft Corp., 244 F.3d 1289, 1296 (11th Cir. 2001).  "The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is 'yes', res judicata applies." In re Piper Aircraft Corp., 244 F.3d at 1296.  Thus, this bar pertains not only to claims that were raised in the prior litigation, but also to claims that could have been previously raised. Davila, 326 F.3d at 1187; Trustmark, 299 F.3d at 1271.  "In determining whether the causes of action

are the same, a court must compare the substance of the actions, not their form.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata." In re Piper Aircraft Corp., 244 F.3d at 1297 (citation and quotation omitted).  Claims that "could have been brought" in an earlier case do not include claims that arise after the original pleading is filed in the earlier case; instead, claims that "could have been brought" are claims *in existence* at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action.  Id. at 1298-99 (citation and quotation omitted).  Further, the doctrine of res judicata prohibits parties from "claim splitting," that is filing a set of claims based on certain theories, then subsequently filing a second set of claims asserting the same operative facts under different legal theories once the first set of claims have proceeded to judgment. Davila, 326 F.3d at 1187; Jang v. United Technologies Corp., 206 F.3d 1147, 1149 (11th Cir. 2000).

The present case is similar to the claims splitting cases the Eleventh Circuit decided in Davila and Jang.  Here, res judicata bars significant portions of plaintiff's claims because of the allegations and claims asserted in Brumagin and Potter I. There is no doubt that, in both of those cases, the first three elements of res judicata are satisfied.  The inquiry here is whether plaintiff's claims in this case ("Potter II") are the same claims as those in Brumagin and Potter I, and whether they could have

been raised in the earlier cases.

Count I of the second amended complaint (Title VII race discrimination) is premised on the February 19, 2002 incident and the USPS's failure to take appropriate corrective action.  This incident formed the bases of plaintiff's eleven claims asserted in Brumagin.  Those claims were essentially the employment discrimination claim plaintiff now asserts in Count I masqueraded as claims arising under various other federal statutes and the common law.

Plaintiff certainly could have asserted the instant Count I in the Brumagin case. Plaintiff's contention that he did not include Count I in Brumagin because he had not yet received a right to sue letter from the EEOC is unavailing in light of controlling precedent in Davila and Jang.  Plaintiff filed the Brumagin case on March 19, 2002. (Doc. 44, Ex. "K").  Plaintiff filed his "Formal EEO Complaint" with the Equal Employment Opportunity division of the USPS on March 26, 2002, citing race discrimination, retaliation and discriminatory harassment/ hostile work environment arising out of the February 19, 2002 incident and the USPS's reaction to it.  (Id. at Ex. "E").  Plaintiff could have (1) delayed the filing of the Brumagin complaint until the earlier of receiving the USPS's notice of final action or 180 days after filing his EEO complaint with the USPS, see 42 U.S.C. § 2000e-16(c)), or (2) filed the complaint and immediately sought a stay until one of the alternative conditions set forth in § 2000e-

16(c) was satisfied and subsequently moved to lift the stay and amend his complaint.[4]

See Davila, 326 F.3d at 1187-88; Jang, 206 F.3d at 1148-49; Rivers, 143 F.3d at

1332; Heyliger, 126 F.3d at 855-56.  To allow plaintiff to proceed on Count I under an

employment theory at this juncture would condone claim splitting and encourage

litigants to assert non-EEO claims and wait to file their EEO claims until after the

resolution of the first case, perhaps obtaining two bites of the proverbial apple.  Count

I of plaintiff's second amended complaint is thus due to be dismissed based on res

judicata.[5]

Further, significant portions of plaintiff's remaining claims are likewise barred

under res judicata.  Counts II and III of the second amended complaint (Retaliation

for EEO Participation and Disability Retaliation and Discrimination) incorporate the

allegations of Count I and further assert a panoply of other allegations.  All of the

allegations that pre-date the filing of plaintiff's original complaint in Potter I (filed on

---

[4]   42 U.S.C. § 2000e-16(c) provides that a party may file a civil action within 90 days after the earlier of (1) obtaining a notice of final action taken by the applicable department (USPS here), (2) obtaining a decision by the EEOC on an appeal from such department, or (3) filing of the initial charge of discrimination with the department or EEOC and 180 days have elapsed - even if the applicable department or EEOC has rendered no decision on the charge.  Thus, upon the expiration of 180 days after filing his charge with the USPS on March 26, 2002 and despite that there was no department decision at the time, plaintiff could have requested his right to sue letter and moved to amend his operative complaint.

[5]   This Court recognizes that plaintiff is proceeding *pro se* and while plaintiff's pleadings are required to be construed liberally under Haines, plaintiff is nevertheless required to comply with the applicable law when bringing a cause of action.  Plaintiff's *pro se* status alone does not relieve him from the application of the res judicata doctrine to his case.

April 7, 2003) are barred under res judicata as these allegations were or could have been raised in the original complaint in <u>Potter I</u> and they pertain to an on the job injury that plaintiff suffered on March 30, 2002, which gave rise to plaintiff's seven asserted claims in <u>Potter I</u>.  Doc. 44, Ex. "M" - <u>Potter I</u> complaint; <u>Piper</u>, 244 F.3d at 1299 (res judicata bars claims in existence at the time the original complaint was filed and claims actually asserted by supplemental pleadings or otherwise in an earlier action). Thus, it is clear that, at very least, plaintiff could have raised his employment discrimination and retaliation claims that pre-dated April 7, 2003 in <u>Potter I</u>.[6]  In fact, as the government points out, a comparison of the original and second amended complaint in <u>Potter I</u> with the second amended complaint in the instant case reveals that many of the allegations in this case are the same as those asserted in <u>Potter I</u>, and plaintiff simply recasts them as Title VII claims.  (Doc. 37; Doc. 44, Ex. "M").

The only allegations that escape the res judicata bar in this case are those post-dating the <u>Potter I</u> original complaint (April 7, 2003).  Those allegations begin in ¶ 82 of the instant second amended complaint (<u>Potter II</u>), wherein plaintiff alleges that his superiors at USPS retaliated and discriminated against him when they transferred

---

[6]   Plaintiff filed his charge of discrimination with the USPS asserting disability discrimination and disability retaliation on April 3, 2003.  (Doc. 44, Ex. "J").  Pursuant to the previously discussed precedent and 42 U.S.C. § 2000e-16(c), plaintiff could have sought to stay the <u>Potter I</u> lawsuit after he filed his charge of discrimination with the USPS until he obtained his right to sue letter (which he was entitled to receive in early October 2003) and could have included his discrimination claims in the <u>Potter I</u> lawsuit.  Plaintiff, however, failed to do so, and is thus barred from asserting them in this lawsuit under res judicata.

him to another job.  Because any claims supported by allegations as of that date and thereafter survive the res judicata analysis, the Court individually addresses the viability of plaintiff's remaining claims based on allegations after April 7, 2003.

### 2.   Employment Discrimination Claims

In Counts II through V, plaintiff asserts employment discrimination claims for retaliation, disability discrimination, hostile work environment and constructive discharge.[7]  Assuming *arguendo* that plaintiff's employment discrimination claims could proceed on the grounds that they have been sufficiently pled, the only claim that is even arguably properly before the Court is plaintiff's claim for constructive discharge, as plaintiff has failed to assert that he has filed any charge of discrimination with USPS, or amended any prior charge, to include claims for hostile work environment, retaliation or disability discrimination that post-date April 7, 2003.[8] Failure to fulfill such an administrative prerequisite is grounds alone for dismissal.

_____

[7]   Counts II and III appear to assert the same claims (retaliation and disability discrimination).  Count III differs from Count II only in that the actions alleged therein purportedly occurred after April 2004, whereas the allegations in Count II pre-date April 2004.

[8]   While the undersigned recognizes that plaintiff filed a charge of discrimination with the USPS on April 3, 2003 asserting disability discrimination and retaliation (Doc. 44, Ex. "H"), the allegations in ¶¶ 81 and 82 in Count II leap from November 2002 to March 2004.  It is the allegations beginning in March 2004 until the filing of the second amended complaint in Potter II that were apparently never made part of any charge of discrimination (as plaintiff fails to allege that any such charge was filed or amended to include those allegations).  Thus, those allegations (beginning in March 2004 and spanning until the filing of the second amended complaint in this case) cannot be used to form the basis of any disability discrimination or retaliation claim(s), as plaintiff fails to allege that he fulfilled the administrative prerequisites to suit.

See Pijnenburg v. West Georgia Health Syst., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001) ("[i]t is settled law that in order to obtain judicial consideration of such a claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred"); see also Grier v. Sec'y of Army, 799 F.3d 721, 724-25 (11th Cir. 1986); Cantrell v. Jay R. Smith Mfg. Co., 248 F.Supp.2d 1126, 1133-35 (M.D. Ala. 2003). That requirement is likewise imputed to federal government employees under 42 U.S.C. § 2000e-16(c), which requires an individual to file a charge of discrimination with the department or agency in which he is employed. Thus, plaintiff's Title VII claims for retaliation and disability discrimination and hostile work environment that post-date the operative res judicata date (April 7, 2003) are due to be dismissed for failure to fulfill the required conditions precedent to suit. This does not include plaintiff's constructive discharge claim (Count V), which was timely presented to the Merit Systems Protection Board (MSPB) upon his termination.

However, a review of plaintiff's constructive discharge claim illustrates that even viewing the facts alleged therein under the liberal pleading standards set forth in Rule 8(a), Federal Rules of Civil Procedure, and in the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 122 S.Ct. 992 (2002), plaintiff's constructive discharge claim is frivolous, and thus plaintiff can prove no set of facts that would entitle him to relief on that claim. Finally, even if plaintiff's remaining Title VII claims (retaliation, disability discrimination and hostile work environment - Counts II, III and IV) were not

barred for his failure to file a charge of discrimination or amend a prior charge asserting them, the Court likewise finds that plaintiff can prove no set of facts that would entitle him to relief on Counts II through IV.  Thus, similar to plaintiff's multiple prior lawsuits deemed frivolous, the undersigned finds that allowing amendment of these claims would be futile.

### 3.    Privacy Act Claim - Count VI

Plaintiff's claim under 5 U.S.C. § 552a(g)(1)(C) & (D) of the Privacy Act essentially posits that defendant maintained "false" and "misleading" employment records and falsified or forged other records relating to his medical condition and employment status, which led to multiple "adverse determinations" against him. Portions of plaintiff's Privacy Act claim, however, are simply reiterations of his employment discrimination claims.

To state a cause of action under the Privacy Act, a plaintiff must allege that 1) the government failed to fulfill its record keeping obligation, 2) which failure proximately caused an adverse determination, 3) that the agency failed intentionally or willfully to maintain the records, and 4) that the plaintiff suffered actual damages. Perry v. Bureau of Prisons, 371 F.3d 1304, 1305 (11th Cir. 2004) (citing Rose v. United States, 905 F.2d 1257, 1259 (9th Cir. 1990)).  In other words, for a suit to lie under § 552a(g)(1)(C) or (D), a plaintiff must allege, among other things, that any breaches of the provisions of these subsections caused some determination *adverse to the individual.* Doe v. Chao, 124 S.Ct. 1204, 1213 (2004) (emphasis added).  A

plaintiff must also avail himself of the administrative remedies set forth in § 552a(d). Taylor v. United States Treasury Dep't, 127 F.3d 470, 474 (5th Cir. 1997); Brown v. U.S. Dep't of Justice, 169 Fed. Appx. 537, 540-41 (11th Cir. Jan. 31, 2006) (unpublished opinion).

Plaintiff's Privacy Act claim fails for three reasons.  First, in asserting the Privacy Act claim in Count VI of the second amended complaint, plaintiff fails to allege that he exhausted the § 552a(d) administrative remedies.  See Taylor, 127 F.3d at 474; see also Brown, 169 Fed.Appx. at 540-41.  Second, a review of the conclusory allegations in Count VI and the allegations in the second amended complaint in toto illustrates that plaintiff can prove no set of facts that would entitle him to relief under the Privacy Act.  Third, significant portions of Count VI merely disguise the dismissed employment discrimination claims as Privacy Act claims.  Thus, Count VI is due to be dismissed with prejudice, as allowing plaintiff to amend would be futile.

### 4.   Count VII - Claim for Declaratory, Injunctive and Miscellaneous Relief

The prayer for relief in Count VII, found in ¶ 149 of the second amended complaint (and re-stated in the "Prayer for Relief" on page 41 of the second amended complaint), seeks declaratory and injunctive relief based on plaintiff's constructive discharge claim submitted to the MSPB - which was ultimately dismissed for lack of jurisdiction on appeal (Doc. 44, Ex. "R").  Because the Court has found that plaintiff can prove no set of facts that would entitle him to relief on his constructive discharge claim, plaintiff is not entitled to any relief requested in Count VII.

**B.     Plaintiff's Motion for Summary Judgment**

In view of the Court's ruling on defendant's motion to dismiss, plaintiff's motion for summary judgment (Doc. 49) is due to be denied.

**C.     Plaintiff's Motions for Sanctions**

Plaintiff's motions seeking sanctions (Docs. 55, 57 & 60) against defense counsel are frivolous, and thus due to be denied.

**D.     Plaintiff's Motion to Take Judicial Notice**

Plaintiff's motion to take judicial notice (Doc. 65) merely states various propositions of law and seeks that this Court take judicial notice of them.  Plaintiff's rendition of judicial notice is not consistent with the tenets of judicial notice codified in Rule 201, Federal Rules of Evidence.  Rule 201 permits the Court to take judicial notice of facts that are "either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonable be questioned."  Fed. R. Evid. 201.  That rule does not apply to propositions of law or facts that are purportedly in dispute that plaintiff believes supports his various legal theories.

Accordingly, it is hereby **ORDERED**:

1.     Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment (Doc. 44) is **GRANTED**.  For the reasons set forth above, all of plaintiff's claims set forth in the second amended complaint are **DISMISSED WITH PREJUDICE**.

2.      Plaintiff's Motion for Summary Judgment (Doc. 49) is **DENIED**.

3.      Plaintiff's Motions for Sanctions (Docs. 55, 57 & 60) are **DENIED**.

4.      Plaintiff's Motion to Take Judicial Notice (Doc. 65) is **DENIED**.

5.      The Clerk is Ordered to close the file and enter judgment in favor of the defendant and against Plaintiff, Andrew P. Moore, II.


**DONE AND ORDERED** at Jacksonville, Florida this <u>26th</u> day of July, 2006.


TIMOTHY J. CORRIGAN
United States District Judge


Copies: counsel of record and pro se party